UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Glenda Hrones, | No. 2:20-cv-00449-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| Rideout Memorial Hospital DBA Adventist Health and Rideout, et al., | |
| Defendants. | |

Federal labor law and state employment law meet in a "tangled and confusing" thicket. *Galvez v. Kuhn*, 933 F.2d 773, 774 (9th Cir. 1990). Federal courts have often hacked through the underbrush only to find they have lost the way. *Cf., e.g.*, *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 692–93 (9th Cir. 2000) (en banc) (overruling several previous decisions). Fortunately, in this case, the path is well worn and clearly marked. Following that path leads the court to conclude it lacks jurisdiction over this action, as explained below. This action is **remanded to state court**.

/////

1

I.     BACKGROUND

Plaintiff Glenda Hrones began working as a nurse in the defendant hospital in 1999. Resp. Stmt. Facts No. 1, ECF No. 31-1.  In or about 2008, she became a member of the California Nurses Association, which was organizing nurses in the hospital at about that time.  *Id.* No. 12; Henry Dep. at 74–75, Pl.'s Ex. 4, ECF No. 31-5; G. Hrones Dep. at 14–16, Pl.'s Ex. 1, ECF No. 31-4.  A labor representative described the organizing efforts as "difficult."  *See* Henry Dep. at 74.  Ms. Hrones would describe the experience as harassment, but that time is now many years in the past, and the administrator who was most directly to blame for Ms. Hrones's privations no longer works at the hospital.  *See* Resp. Stmt. Facts No. 13.  That said, tensions have not completely slackened between Ms. Hrones and the human resources department, especially with one employee in particular: Kim Triplett.  *See* Henry Dep. at 74–75.

This litigation began with a workplace security gaffe.  One day in late 2017, Ms. Hrones left work sick.  *See* G. Hrones Dep. at 151.  She asked her husband to pick up her medication and her unfinished lunch from her office in the hospital.  *See id.*; C. Hrones Dep. at 10, Pl.'s Ex. 2, ECF No. 31-4.  He went, but rather than checking in with security at the front door, he used his wife's badge and key to enter the hospital through a locked side door.  *See* C. Hrones Dep. at 10–14.  When Ms. Triplett learned that someone other than Ms. Hrones had used her badge—a violation of the hospital's security policies—she began an investigation that culminated in Ms. Hrones's negotiated resignation.  *See* Triplett Decl. ¶¶ 3–9, 13–14, ECF No. 29.

Ms. Hrones filed this action against the hospital in state court in early 2019.  *See generally* Compl., Not. Removal Ex. A, ECF No. 1-1.  She asserts five claims, all under state law: age discrimination, retaliation, constructive discharge, fraud, and intentional infliction of emotional distress.  Second Am. Compl., Not. Removal Ex. A, ECF No. 1-1.  The parties are not diverse, but the hospital removed the case to this court.  *See generally* Not. Removal, ECF No. 1.  It argued two of Ms. Hrones's claims, retaliation and fraud, are preempted by section 301 of the Labor Management Relations Act.  *See id.* ¶¶ 6–24.  If at least one of those claims is indeed preempted, this court would have jurisdiction, as explained in more detail below.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 n.5 (1988).

Now, two years later, discovery is complete, and the hospital moves for summary judgment. *See generally* Mot., ECF No. 26; Mem., ECF No. 27. It did not argue in its moving papers, however, that Ms. Hrones's retaliation and fraud claims are preempted under section 301. It relied instead on the statute of limitations, California law for claims of retaliation and fraud, and a different preemption doctrine that cannot give this court jurisdiction. *See* Prev. Order at 2–3, ECF No. 38. Ms. Hrones opposes the motion, and the hospital has replied. *See generally* Opp'n, ECF No. 31; Reply, ECF No. 25.

Before the hearing, the court directed the parties to submit supplemental briefs addressing this court's jurisdiction, which they have done. *See generally* Prev. Order; Def.'s Suppl. Br., ECF No. 39; Pl.'s Suppl. Br., ECF No. 40. Despite the hospital's decision not to rely on section 301 in its motion for summary judgment, it argues in its supplemental brief that Ms. Hrones's retaliation and fraud claims are in fact preempted under that section. *See* Def. Suppl. Br. at 4–8. The hospital also argues for the first time that the discrimination claim is preempted. *Compare id.* at 4–6 *with* Not. Removal ¶¶ 6–24. Ms. Hrones contends none of her claims is preempted by section 301. *See generally* Pl.'s Suppl. Br. The court heard oral arguments by videoconference on February 11, 2022. Mark Ellis appeared for Ms. Hrones, and Candice Zee appeared for the hospital.

## II. JURISDICTION

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the parties are not completely diverse, or if the amount in controversy is too low, then a federal court has jurisdiction only if the action arises under "the Constitutions, laws, or treaties of the United States." *Id.* at 392 & n.6 (quoting 28 U.S.C. § 1331). This "federal question" must generally "appear on the face of the plaintiff's complaint." *Galvez*, 933 F.2d at 775. As a result, if a federal court would not have jurisdiction based on the parties' citizenship or the amount in controversy, a plaintiff may avoid federal court by relying exclusively on state law. *See Caterpillar*, 482 U.S. at 392.

Although plaintiffs may choose to plead only state claims, they may not avoid federal court by "omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983). For example, if a federal statute entirely displaces a particular state-law claim—that is, if the statute completely preempts the state law—then a plaintiff may not prevent the defendant from removing the action by citing the displaced state law and sweeping the federal statute under the rug. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

In the 1960s, the Supreme Court held that section 301 of the Labor Management Relations Act completely preempts state contract law in the interpretation and enforcement of collective bargaining agreements. *See Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). The Court emphasized the importance of "uniform law" in collective bargaining agreements. *Id.* at 103 (citation omitted). "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.* If courts were free to interpret collective bargaining agreements with a variety of potentially conflicting state interpretive rules, the Court reasoned, then Congress's purposes would be frustrated. *See id.* at 104.

About twenty years later, the Court held that in addition to contract claims, section 301 preempts any state claim whose resolution "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmer Corp. v. Leuck*, 471 U.S. 202, 220 (1985). The Court has often reiterated that rule, but it has cautioned that section 301 does not preempt all "employment-related matters involving unionized employees." *Caterpillar*, 482 U.S. at 396 n.10. A state claim is preempted only if it "requires the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413. "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can

4

be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409–10.  Similarly, if to resolve a claim the court need only "look to" a collective bargaining agreement, rather than "interpret" the agreement, the claim is not preempted.  *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994).

Although federal courts have often struggled to put these rules into practice, *see Cramer*, 255 F.3d at 691, a few basic principles are settled:

(1) "If the plaintiff's claim cannot be resolved without interpreting the applicable [collective bargaining agreement] . . . it is preempted." *Id.*

(2) "[I]f the claim may be litigated without reference to the rights and duties established in a [collective bargaining agreement] . . . it is not preempted." *Id.*

(3) "If [a] claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." *Id.*  If "the meaning of contract terms is not the subject of dispute," then the claim is not preempted.  *Id.* at 690–91 (quoting *Livadas*, 512 U.S. at 124).

In short, "[a] state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Id.* at 693.

Returning, then, to Ms. Hrones's case, the court must decide whether section 301 preempts any of her claims under the standard above.  If not, then this court would not have had original jurisdiction over the action if she had filed it here, and the case must be remanded to state court.  *See* 28 U.S.C. § 1447(c); *Galvez*, 933 F.2d at 775–76.  Because the hospital invokes this court's jurisdiction, it bears the burden of establishing jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).  Any doubts are resolved against the hospital and in favor of remand.  *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam).

       The hospital has not carried its burden. As noted above, it contended in its notice of removal that two of Ms. Hrones's claims were preempted: the retaliation claim and the fraud claim. *See* Not. Removal ¶¶ 6–24. The court begins with the retaliation claim.

       Ms. Hrones alleges the hospital forced her to resign in retaliation for her organizing efforts with the California Nurses Association. *See* Second Am. Compl. ¶ 22. She relies on section 12940 of the California Government Code. *See id.* That section prohibits "any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part"—i.e., the Fair Employment and Housing Act—"or because the person has filed a complaint, testified, or assisted in any proceeding under this part." *See* Cal. Gov't Code § 12940(h). California courts use a three-stage burden-shifting test when trying retaliation claims under section 12940(h). *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). At stage one, plaintiffs must show (1) they were "engaged in a protected activity," (2) an employer subjected them to an adverse employment action, and (3) "a causal link" connected the protected activity and the adverse employment action. *Id.* (quotation marks omitted). A presumption of retaliation then arises. *See id.* The employer may rebut that presumption by offering "a legitimate, nonretaliatory reason for the adverse employment action." *Id.* If the employer had a legitimate reason, "the burden shifts back to the employee to prove intentional retaliation." *Id.*

       Each of the elements above requires only a "purely factual inquiry." *Lingle*, 486 U.S. at 407. Did Ms. Hrones engage in a "protected activity" as defined by California law? Did the hospital subject her to an adverse employment action? Was that adverse action connected to her protected activity by a chain of cause and effect? Did the hospital have a legitimate reason for what it did? And if so, was that legitimate reason merely pretext? None of these questions requires interpretation of the collective bargaining agreement. *See, e.g.*, *Shields v. Andeavor Logistics LP*, No. 19-04995, 2019 WL 3453202, at *3 (C.D. Cal. July 31, 2019) (holding a retaliation claim under the Fair Employment and Housing Act was not preempted for this reason); *Lencioni v. UA Loc. 467, Plumbers, Steamfitters & Refrigeration Fitters*, No. 16-04518, 2016

WL 6069232, at *7 (N.D. Cal. Oct. 17, 2016) (same).  Section 301 does not preempt the retaliation claim.

In an attempt to avoid this conclusion, the hospital portrays the retaliation claim as a bargaining agreement grievance in state-law clothing.  *See* Def.'s Suppl. Br. at 4–6.  The hospital's collective bargaining agreement prohibits "discrimination on account of membership or non-membership in the Union."  *See* Agmt. Art. 4, § A, Suppl. Zee Decl. Ex. 3, ECF No. 39-1.  Ms. Hrones does not claim, however, that the hospital violated the collective bargaining agreement, and the hospital has not cited any law that would require her to do so.  Nor do the parties dispute the meaning of any bargaining agreement terms.  Without a dispute to resolve, there is nothing for this court to interpret, and thus no state-law interpretative conflict to avoid by way of preemption.  *See Cramer*, 255 F.3d at 690–91.  To be sure, if Ms. Hrones had pursued a grievance under the collective bargaining agreement, she may very well have relied on allegations identical to those she laid out in her complaint.  But even if "precisely the same set of facts" would be litigated in a grievance procedure, her state law claim would remain "independent" of the collective bargaining agreement and would not be preempted.  *Lingle*, 486 U.S. at 410.

The hospital also contends Ms. Hrones's retaliation claim must actually be a federal claim because, in the hospital's assessment, the Fair Employment and Housing Act does not forbid retaliation against workplace organization efforts.  *See, e.g.*, Def.'s Suppl. Br. at 6.  The hospital advanced a similar argument at hearing and in an unauthorized supplemental brief.  *See* Def.'s Add'l Auth., ECF No. 42 (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).[1]  This is not an argument for complete federal preemption; it is an argument about what is "protected" under California law.  Whether Ms. Hrones's claim would survive in state court is "irrelevant."  *Galvez*, 933 F.2d at 776.  The right to be free from retaliation for protected activities, like the wage claim in *Burnside*, "is a right conferred as a matter of state law that exists independent of the terms of the [collective bargaining agreement]."  491 F.3d at 1074.  The

---

[1] The unauthorized supplemental brief is **stricken**.  *See* Standing Order at 3, ECF No. 6-1 ("No supplemental brief shall be filed without prior leave of court.").  Even if the court did consider the brief, however, it would not lead the court to a different conclusion.

retaliation claim "can be resolved without interpreting [that agreement]," so this court's jurisdiction cannot rest on the retaliation claim. *Id.*

The fraud claim is next. Ms. Hrones alleges Ms. Triplett persuaded her to resign by making false promises about her health insurance benefits and possibly other matters. *See* Second Am. Compl. ¶ 31. A claim for fraud or deceit under California law has five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) (citations omitted). "Promissory fraud is a subspecies of the action for fraud and deceit" *Id.* (quotation marks omitted). "A promise to do something necessarily implies the intention to perform," so a promise without an intent to perform is an "implied misrepresentation of fact that may be actionable fraud." *Id.*

Again, these elements require no interpretation of the collective bargaining agreement. A fact-finder need only decide what Ms. Triplett promised, whether she intended to do as promised, whether she intended for Ms. Hrones to resign in reliance on that promise, whether Ms. Hrones justifiably relied on Ms. Triplett's promise, and whether she sustained damages as a result. Although it may be necessary to consider Ms. Hrones's rights under the collective bargaining agreement when deciding whether she was justified in relying on Ms. Triplett's alleged promises, that question would require only an "examination" of those terms, not an "interpretation." *See Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408–10 (9th Cir. 1991).

The hospital focuses on the final element of fraud: damages. It argues this court must interpret the collective bargaining agreement because Ms. Hrones alleges she "suffered damages in that she was required to waive her right to challenge the decision to terminate her employment via the grievance process afforded by reason of her union membership." Second Am. Compl. ¶ 36; *see* Def.'s Suppl. Br. at 7. The hospital argues, in other words, that the value of Ms. Hrones's damages claim depends on the value of the procedures and other benefits she forfeited. The Supreme Court's decisions in *Livadas* and *Lingle* foreclose any success on that basis. "[T]he mere need to 'look to' the collective-bargaining agreement for a damages computation is no

1  reason to hold the state-law claim defeated by § 301." *Livadas*, 512 U.S. at 125 (citing *Lingle*,
2  486 U.S. at 413 n.12). "Although federal law would govern the interpretation of the agreement to
3  determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would
4  stand." *Lingle*, 486 U.S. at 413 n.12. The hospital has, moreover, identified no dispute between
5  itself and Ms. Hrones about the meaning of any relevant bargaining agreement terms, so again,
6  this court has nothing to "interpret." The fraud claim cannot serve as the basis for this court's
7  jurisdiction.

8  The hospital did not advance any other viable jurisdictional theory in its notice of
9  removal. *See* Prev. Order at 2–3. In its supplemental brief, however, it argues Ms. Hrones's
10 discrimination claim, too, is preempted by section 301. Suppl. Br. at 4. A notice of removal
11 "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period."
12 *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108,
13 1117 (9th Cir. 2000) (quoting *O'Halloran v. University of Washington*, 856 F.2d 1375, 1381 (9th
14 Cir. 1988)). But this court would have jurisdiction over the action "on all grounds apparent from
15 the complaint, not just those cited in the removal notice." *Williams v. Costco Wholesale Corp.*,
16 471 F.3d 975, 977 (9th Cir. 2006) (per curiam). The court must therefore consider whether
17 preemption is apparent given Ms. Hrones's discrimination allegations.

18 In "a long line" of cases, the Ninth Circuit has held that employment discrimination
19 claims under the Fair Employment and Housing Act "are not ipso facto preempted by § 301."
20 *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007). True to that trend, the court
21 can see no connection between Ms. Hrones's discrimination allegations and the collective
22 bargaining agreement. She alleges she was terminated despite her adequate job performance, was
23 over 40 at the time, and was replaced by a younger person. *See* Second Am. Compl. ¶ 17. The
24 hospital cites no provisions in the collective bargaining agreement that would need interpretation
25 before Ms. Hrones's allegations are put to the test. Ms. Hrones's discrimination claim does not
26 give this court jurisdiction.

### III. CONCLUSION

The Clerk of Court is directed to **strike** the unauthorized supplemental brief (ECF No. 42).

The hospital has not shown any of Ms. Hrones's claims are preempted under section 301 of the Labor Management Relations Act, so her complaint raises no federal question. For that reason, this court lacks subject matter jurisdiction. The court **remands** this action to the California Superior Court for Yuba County, and the Clerk of Court is directed to **close the case**.

IT IS SO ORDERED

DATED: June 9, 2022.

CHIEF UNITED STATES DISTRICT JUDGE